PHILIP TISCHLER, PLAINTIFF IN ERROR, VS. KURTZ BROS., DEFENDANTS IN ERROR.

1. The general rule is, that one partner has no implied authority to bind the firm by an instrument under seal, but where such an instrument has been executed by one partner in the firm name in the scope of the partnership business it may be ratified by the other partner by prior or subsequent oral asset, or by implication from acts or declarations of such partners.

2. A charge of the court to the jury, though asserting a correct proposition of law, will be error when there is not sufficient proof to sustain a verdict on the theory of the case submitted to the jury by the charge.

3. While, as a general rule, a written contract not under seal may be varied by subsequent oral agreement based upon a sufficient consideration as to its terms to be performed in the future, the prevailing view, following the common law rule. is that a covenant or contract under seal can not be modified before breach by a parol executory contract.

Writ of Error to the Circuit Court for Duval county.

STATEMENT.

The proceeding here is by distress warrant, sued out by the plaintiff in error against defendants in error in the Circuit Court for Duval county. The affidavit avers that Philip Kurtz and Benjamin Kurtz, partners, doing business as Kurtz Brothers, were indebted to affiant in the sum of five hundred dollars as rent for the use of certain described premises in the city of

Jacksonville, Duval county, Florida, from the 15th day of August, 1888, to the 15th day of January, 1889. A distress warrant was issued and levied on personal property on the premises.

Defendants made oath that it was not true that Philip Kurtz was indebted to the affiant Tischler for rent in any amount whatever, and that it was not true that either of the defendants was indebted to Tischler for rent in the sum of five hundred dollars; that Benjamin Kurtz owed Tischler three hundred dollars for rent, one hundred dollars of which was paid by him to Tischler, and by him attempted to be returned, and the remaining two hundred dollars was tendered to him and refused, and that the three hundred dollars, and every part thereof, was tendered by Benjamin Kurtz to Tischler, and by him refused before the commencement of the suit. A bond was also executed by defendants conditioned that they would well and truly pay the amount of the rent found to be due on the trial.

The case was submitted to a jury, a verdict rendered in favor of defendants and judgment entered in their favor.

The plaintiff introduced in evidence a lease from himself to Kurtz Bros. to the premises in question for the term of three years next ensuing the 15th day of June, 1886, at the rental of one hundred dollars per month in advance, and one-half the water tax quarterly as presented. The lease was under seal and signed by Philip Tischler and Kurtz Bros., by B. Kurtz. Plaintiff testified that defendants were his tenants from the 15th day of June, 1886, until the 15th day of January, 1889, and during that time occupied the premises mentioned under the lease, conducting a partnership business under the firm name of Kurtz Bros., in the whole-

·sale and retail of tobacco and cigars. That at the time the distress warrant was sued out, the defendants ·owed rent from August 15th, 1888, to January 15th, 1889, at the rate of one hundred dollars per month, making the sum of five hundred dollars, no part of which had been paid. He further testified, on cross-·examination, that Benjamin Kurtz did not tender him three hundred dollars, or any other amount, in payment of rent; that he, Kurtz, took out of his pocket a roll of something resembling bills, and said he would give witness three hundred dollars, but did not count ·it. Witness replied that he would take it on account ·of the rent, but Kurtz declined to give it to him unless he would take it in full payment. About the 20th of December, 1888, Kurtz brought witness a check for one hundred dollars, and said "this is for this month's rent," and witness thinking there was some catch in it returned it stating that unless it was given on account of past due rent he could not accept it. Witness denied that he had seen a notice of dissolution of the partnership between Philip and Benjamin Kurtz, or that he had ever received by mail such a notice. He recollected that Philip Kurtz, in May, 1888, said that he was going to leave Jacksonville, and go to New York, and did not think that he would come back to Jacksonville, as he could do better in business in New York. Witness then stated that he hoped Kurtz would do well, and that it did not matter with him who paid the rent, so long as it was paid. Witness admitted the receipt of two checks on a bank in Jacksonville, drawn by Benjamin Kurtz, one dated June 15th, 1888, and the other July 16th, 1888, each for one hundred dollars. The checks were for rent and were paid. Witness further stated that he went to New York, and returned after the epidemic had commenced, and found

that his nephew, a clerk, had gone away and left witness' store in charge of another clerk. Benjamin Kurtz did not take charge of the store during the epidemic, and witness' nephew did not give him charge of the store. Kurtz did no work for witness, and he never promised Kurtz to knock off any part of the rent on that account, or for any other reason, but distinctly stated that he would not make any deduction in the rent. The nephew was clerk and had no authority to put any one in charge of the store. Witness was asked if he did not in the presence of Mike Kurtz, in December, 1888, after the epidemic, at a certain place designated, say to Benjamin Kurtz that, as he had kindly looked after witness' store for a while during the epidemic, he would make a reduction of fifty *per cent.* of the rent. Witness denied positively making such statement, and said that Kurtz claimed that he had taken charge of the store, and a reduction of fifty *per cent.* of the rent ought to be made, but witness declined emphatically to do so.

Defendants put in evidence the two checks referred to, and also a notice of a dissolution of the partnership of Kurtz Bros., dated May 24th, 1888. Philip Kurtz testified that in May, 1888, he retired from the firm of Kurtz Bros., had notices of the dissolution printed and mailed to all the creditors, and put one in the postoffice addressed to plaintiff. He further stated that he called the attention of the plaintiff to the fact of his retirement from the firm, and that Benjamin Kurtz would pay the rent in the future. Plaintiff told him, Philip Kurtz, that it was all right, he did not care so long as he got his rent.

Mike Kurtz testified for defendants that plaintiff told Benjamin Kurtz, brother of witness, that he, plaintiff, would make a reduction of the rent on account of the

epidemic and the services rendered by Kurtz in taking care of the store. That Benjamin Kurtz, after the epidemic had commenced, and after plainfiff's nephew had gone away, took charge of plaintiff's store, opening it in the morning, and closing it at night. This was from about August 12th, 1888, until plaintiff's return, about August 23rd of same year, and there was at the time in the store clerking for plaintiff a man who remained in the city attending to the store. The witness Mike Kurtz further testified that the plaintiff made a statement, which he denied making, in the presence of the witness, that is, inasmuch as Benjamin Kurtz had kindly looked after the store for a while during the epidemic, the plaintiff would allow him fifty *per cent.* reduction on the rent.

In rebuttal plaintiff introduced a witness who was in Jacksonville the greater part of the epidemic of 1888, and testified to seeing the clerk in plaintiff's store, but did not recollect of seeing Kurtz there.

Plaintiff further testified that his nephew had no authority to put the store in charge of any one. When he left, Tyler took charge, and plaintiff on his return found him in charge.

The other facts in the case are stated in the opinion of the court.

*M. C. Jordan*, for Plaintiff in Error.

No appearance for Defendant in Error.

MABRY, C. J.:

The general rule is, that one partner has no implied power to bind the firm by an instrument under seal. This court said in Jeffreys vs. Coleman, 20 Fla. 536, that "the doctrine of the English common law was that

a bond signed by one partner in the course of partner ship business, without an authority under seal, binds only the partner who signs and seals it, although it is signed and sealed in the name of the firm. The old authorities assert that no prior authority or subsequent ratification, either verbal or by writing without seal, is sufficient to give validity to the instrument as the sealed contract of the parties. The American courts have strongly inclined to repudiate the doctrine in all cases where an express or implied authority or confirmation could be justly established, not under seal, whether it be verbal, or in writing, or circumstantial.'' It was held that a bond given on suing out an attachment by a partnership firm, signed and sealed by one member in the firm name, the same having been ratified by parol, is a sufficient bond of all the partners. The authorities are numerous holding that validity and effect may be given to an instrument under seal, executed by one partner in the firm name in the scope of the partnership, by prior oral assent or subsequent parol ratification, or by implication of authority from acts or declarations of the other partners. 17 Am. and Eng. Ency. of Law, 1001, paragraph 5 and note. This court has, in the case referred to, sanctioned this view.

On the uncontradicted evidence before us it is clear that the three-year lease of the premises therein described, though under seal, was binding upon the firm of Kurtz Bros. After the lease was executed in the firm name the leased premises were used for the purpose of conducting therein a wholesale and retail business by Kurtz Bros., and they continued to use and occupy the premises for partnership purposes up to the time of the dissolution of the firm, some time in May, 1888. They do not deny that they went into possession of the premises under the lease and occu-

pied them for the purposes and during the time men-
tioned.   The act of Philip Kurtz in going into the
possession of the premises under the lease and paying
rent as therein provided, in the absence of any proof
to the contrary, is sufficient to show that he ratified
the acts of his partner in making the lease under seal.
The uncontradicted testimony further shows that the
rent provided for in the lease was not paid from the
15th day of August, 1888, to the 15th day of January,
1889.   The affidavit of the defendants states that Ben-
jamin Kurtz owed the plaintiff three hundred dollars,
one hundred of which had been paid and attempted to
be returned, and the entire amount had been tendered
and refused before suit commenced.   No effort was
made, except on cross-examination of plaintiff, to show
that any payment or any sufficient tender, was made of
the rent for the time from the 15th of August, 1888, to
January 15th, 1889, and the plaintiff expressly nega-
tived any such payment or tender.   Plaintiff testified
that he was informed in May, 1888, by Philip Kurtz
that he was going to leave Jacksonville, and go to New
York, and would not come back to Jacksonville, and
plaintiff expressed a hope that Kurtz would do well,
and that it did not matter who paid the rent, so long
as it was paid.   Philip Kurtz testified that he retired
from the firm of Kurtz Bros., in May, 1888, and put
notice of the dissolution of the firm in the post office
addressed to plaintiff, and he called plaintiff's atten-
tion to the fact that he, Philip Kurtz, had retired from
the firm, and that Benjamin Kurtz would pay the rent
in the future.   He further testified that plaintiff said
it was all right, he did not care, so long as he got his
rent.   This testimony, and the further fact that Ben-
jamin Kurtz gave plaintiff two checks, dated in June
and July, 1888, for rent, constitute the showing as to

the release of Philip Kurtz from the payment of the rent due under the lease.

The suit was against Kurtz Bros., as partners, and the court charged the jury that if they believed from the evidence that the partnership was dissolved May 24th, 1888, and that plaintiff knew it, and released Philip Kurtz from the payment of the rent, then their verdict should be for the defendants. The court also instructed the jury that as the defendants were sued as partners a verdict could not be found against one without finding against both, and that unless both of said defendants were liable for the claim of plaintiff, the verdict should be in favor of the defendants.

It is evident that the verdict of the jury in favor of the defendants was based upon the view that plaintiff had released Philip Kurtz from the payment of rent under the lease. Under no other theory could the jury have failed to find a verdict for at least three hundred dollars in favor of plaintiff. The testimony is not sufficient, in our judgment, to authorize a finding that plaintiff released Philip Kurtz from payment of rent under the lease, and the court was in error in submitting the case to the jury on that theory. The dissolution of the firm alone did not, of course, have the effect to release either of the parties from antecedent firm liabilities. The statement of Tischler to Philip Kurtz (conceding that it was made) when informed of the dissolution of the firm, and that Benjamin Kurtz would pay rent in the future, can not properly be construed into a release of Philip from paying rent under the lease. There was no consideration whatever for the alleged release, and in fact the language used does not imply any release. The fact that Benjamin Kurtz paid rent after the dissolution does not change the nature of the obligation under the lease. The verdict of the

jury in favor of the defendants on the evidence as to a release of Philip Kurtz is without legal support and can not be sustained. This conclusion is reached without reference to whether the rent reserved in the lease under seal can be changed by parol.

The judgment must be reversed and a new trial had, but as it is apparent from the testimony offered by defendants, tending to show that plaintiff agreed to reduce the rent fifty *per cent.* on certain accounts, that the question will again arise as to the right to do this, it becomes proper for us to express an opinion on this point. It is well settled, as a general rule, that a written contract not under seal may be varied by subsequent oral agreement based upon a sufficient consideration as to its terms to be performed in the future. Wheeler vs. Baker, 59 Iowa, 86, 12 N. W. Rep. 767; Hastings vs. Lovejoy, 140 Mass. 261, 2 N. E. Rep. 776; 1 Greenleaf on Evidence (15th ed.), secs 302, 303. There is a conflict in the American decisions as to whether a parol agreement reducing the rent is competent evidence to vary the terms of a lease under seal. In the case of Hastings vs. Lovejoy referred to, the Massachusetts court held that in an action for rent reserved in a written lease under seal the lessee could prove in defense that, after the delivery of the lease, the lessor for a good consideration orally agreed that for the future the rent should be reduced. It was said: "In reference to contracts under seal, it was formerly held, especially in England, that they could not b' thus varied. But in the United States the tendency of judicial decisions has been to apply the same rule in this respect to sealed instruments as to simple contracts." Considering the real virtue there is in the use of seals at the present day, the view taken by the Massachusetts court has much weight. The legisla-

tion of this State has not undertaken to change the legal effect of sealed instruments, and it is our duty under our system to keep in mind, in declaring the law, what is the common law rule so far as it has not been changed by statute or our peculiar institutions. Without going into a discussion of the cases on the subject, we are of the opinion that the prevailing view in America following the common law rule is that a covenant or contract under seal can not be modified before breach by a parol executory contract. . Sinard vs. Patterson, 3 Blackford, 353; Carpenter vs. Shanklin, 7 Blackford, 308; Hume Bros. vs. Taylor & Moss, 63 Ill. 43; Eddy vs. Graves, 23 Wend. 82; Allen vs. Jaquish, 21 Wend. 628; Delacroix vs. Bulkley, 13 Wend. 71; Coe vs. Hobby, 72 N. Y 141, 28 Am. Rep. 120; Smith vs. Kerr, 33 Hun. 567. The New York courts held that the breach of a sealed contract, the parties to it may discharge any liability under it by entering into a new agreement in relation to the same subject-matter founded upon a sufficient consideration. We can not anticipate what the evidence will be on the next trial of this case, and do not desire to express any opinion as to the effect of that now before us in reference to reducing the rent.

So far as we are advised by the record, there was no purpose to show that the lease existing between the parties had been surrendered, but only a modification of its terms as to the amount of the rent, leaving the other terms and conditions in force. Whether a lease by simple contract or agreement under seal can be surrendered and a new contract substituted therefor is, of course, not involved in what is here said.

The judgment is reversed and a new trial awarded.