R. J. TAYLOR and JOHN PASCO v. MARY P. FINLAYSON, by her next friend, D. A. FINLAYSON.

176 So. 44.

Division B.

Opinion Filed September 3, 1933.

Rehearing Denied October 9, 1935.

On Second Petition for Rehearing Denied July 24, 1936.

On Third Petition for Rehearing November 9, 1936.

On Further Rehearing June 28, 1937.

*Waller & Pepper,* for Appellants;
*Davis & Davis,* for Appellee.

PER CURIAM.—This appeal is from a decree confirming the sale and granting a deficiency decree in a mortgage foreclosure suit. Seven questions are urged for reversal of the judgment below, but we find no reversible error except as to the question of whether or not a mortgagee can secure a deficiency decree for taxes and paving assessments under a mortgage which did not require the mortgagor to pay either and it is shown that the mortgagee has not paid the taxes.

We express no opinion as to whether or not the other

questions urged are properly here. It is not shown that in his ruling on them the chancellor committed error.

We find nothing in the record binding the mortgagor to pay for improvement liens. A deficiency decree for them was, therefore, erroneous. The mortgage covenants contain nothing about them. As to taxes the mortgagee had a right to pay them to protect his mortgage, but the record indicates that they have not been paid, so this protection was not availed of. Under the law the chancellor could have ordered them paid from the funds bid at the sale and allowed a deficiency decree accordingly.

The judgment below is reversed for a proper decree.

Reversed.

Ellis, P. J., and Terrell and Buford, J. J., concur.

Whitfield, C. J., concurs in the opinion and judgment.

Brown and Davis, J. J., concur specially.

Davis, J. (concurring).—Assuming that the present appeal opens the question of deficiency decree *vel non* for review, I am of the opinion that no deficiency decree at all can be entered in a mortgage foreclosure case against persons who did not sign the notes evidencing the mortgage debt, but that the implied liability, if any, of joint adventurers with the mortgagor must be enforced at law.

I concur in reversal.

Brown, J., concurs.

## On Rehearing.

Per Curiam.—The petition for rehearing advances the appellees' contention that the Chancellor in allowing a deficiency decree in this case (which deficiency decree was reversed by our opinion filed September 3, 1935) did not allow the same by way of a recovery for taxes *eo nomine* as this Court's opinion seemed to imply, but as a sort of indemnity against the amount of taxes that had accrued on

the conveyed property during the time the title was in the vendees subject to the purchase money mortgage which was in this case foreclosed.

In other words, appellees maintain that the Chancellor was entitled under the law to enter for a much larger amount, a deficiency decree in this case against the mortgagors and against those identified with such mortgagors as alleged joint adventurers in the purchase of the mortgaged land, but that he only allowed a recovery by way of deficiency for that part of the total deficiency which was the equivalent of (but not the representative of) the accrued and unpaid taxes that had become "plastered" (to use the descriptive language of the appellees) as tax liens against the mortgaged *rem*.

It must be confessed that there has been created some confusion in the minds of this Court by the Chancellor's language that he was decreeing a deficiency judgment for "the sum of $4,925.87, which is the amount due the complainants for past-due taxes and improvement liens" in the particulars charged in appellee's petition for rehearing.

However, this was strictly a mortgage foreclosure suit, the foreclosure of a purchase money mortgage wherein the note and mortgage was signed only by R. J. Taylor, Trustee, Taylor's wife joining in the mortgage. If Pasco was a joint adventurer with Taylor in the purchase of the property, as held by the Chancellor, his liability is not on the notes for security in the payment of which the mortgage was given, since he did not sign, but is an implied liability for the purchase price irrespective of the notes, although perhaps measurable in a proper action by the amount of the notes. Section 6778 C. G. L., 4692 R. G. S.; Drew v. Hobbs, 104 Fla. 427, 140 Sou. Rep. 211, text 213. And even if mortgagor Taylor signed solely in a representative capacity without disclosing his principal, it would not ex-

empt him from liability *on the notes*. Section 6780 C. G. L., 4694 R. G.S.

Under the law the Chancellor could have adjudicated the amount of taxes due, and thereupon decreed that the mortgaged land should be sold free of the tax and improvement liens on it at the time by directing that same be discharged out of the sale proceeds. (Chapter 10285, Acts 1925, Section 954 C. G. L.) But he did not do so, hence the mortgagee-purchaser at the Master's sale is presumed to have arrived at the amount of her bid therefor in consideration of the fact that the property was being sold *cum onera* the taxes and improvement liens subject to which it was being sold.

Therefore the Chancellor should not have indirectly allowed recovery for such tax and improvement liens either in the form of a deficiency judgment limited to the amount of same or by requiring in terms that the mortgagor should pay them, or by indirectly undertaking to measure the amount of a larger deficiency claimed on the basis of other considerations, by the amount of such tax improvement liens.

The reversal of the deficiency judgment should stand as against the petition for rehearing, but with leave of the Chancellor to reconsider the whole question of deficiency judgment in the light of the limitations stated in this opinion which should be construed as a modification of the former opinion to that end.

Rehearing denied with modification of former opinion.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

ON SECOND PETITION FOR REHEARING.

ELLIS, P. J.—This case, which first appeared in this Court in October, 1934, came here by appeal from an order by the Chancellor made February 28, 1934, confirming the report af a special master who had been appointed by a final decree dated December 18, 1933, to execute the provisions of the decree. The last mentioned decree adjudicated the amount due to the complainant in the cause, which was a foreclosure proceeding, directed the amount to be paid within a time fixed by the decree and in default thereof that the mortgaged premises be sold.

In paragraph ten of the final decree the court retained jurisdiction of the cause to settle "all other questions that this Court has jurisdiction to settle under the bill of complaint and the proceedings herein had, not settled by this or previous decrees and orders in this cause, as to the Court shall seem proper in equity and as the circumstances of the case may require."

The order from which the appeal was taken directed the master to pay over to the complainant the sum of $6,391.05 held by the master; to execute and deliver to Mrs. Finlayson, the purchaser of the mortgaged property at the sale, a deed of conveyance for the property, and that she, the complainant, have a deficiency judgment against R. J. Taylor and John Pasco as joint adventurers, doing business as "R. J. Taylor, Trustee," in the sum of $4,925.87, which amount was stated to be the amount due the complainant "for past-due taxes and improvement liens." It was ordered that execution issue therefor. See R. J. Taylor and John Pasco, Appellants, v. Mary P. Finlayson, by her next friend, D. A. Finlayson, Appellee, decided September 3, 1935, not yet reported.

This Court in its opinion stated that several questions were urged for reversal, but it found no reversible error

except as to the question whether a mortgagee can secure a deficiency decree for taxes and paving assessments under a mortgage which does not require the mortgagor to pay either and it is shown that the mortgagee has not paid the taxes. The Court also said that it was not shown that the Chancellor committed error in his ruling on the other questions as to which the Court expressed no opinion whether such questions were properly before the Court.

The Court definitely stated that it found nothing in the record binding the mortgagor to pay for "improvement liens" and a "deficiency decree for them was, therefore, erroneous." As to taxes, the Court said: "the mortgagee had a right to pay them to protect·his mortgage, but the record indicates that they have not been paid, so this protection was not availed of. Under the law the chancellor could have ordered them paid from the funds bid at the sale and allowed deficiency decree accordingly." The order of the Court was that the "judgment" be "reversed for a proper decree."

Mr. Justice DAVIS, in a succinct concurring opinion, with which Mr. Justice BROWN agreed, said: assuming that the appeal opened the question of the deficiency decree *vel non* for review, he was of the opinion that no deficiency decree could be entered in a mortgage foreclosure case against persons who did not sign the notes evidencing the mortgage debt, but that the implied liability, if any, of joint adventurers with the mortgagor must be enforced at law.

The decision of the Court evidently means that the Chancellor should amend the decree by eliminating therefrom the item for improvement liens and taxes. Improvement liens should be eliminated because the mortgage did not require the mortgagor to pay them and the taxes should be eliminated because while the mortgagee could have paid them and thus protected her security by including the amount so

paid in the mortgage debt she had not availed herself of that protection, from which it must be inferred that she could not now demand the payment of them by the mortgagor.

While the decree states that the Chancellor could have ordered the taxes paid from the funds bid at the sale and allowed a deficiency therefor, the fact remains that he did not do it, but on the contrary directed the Master to pay over to the complainant the amount realized from the sale less solicitors' fees and costs which amounted to $1,108.95.

No supersedeas was taken on the appeal and presumably the decree was duly executed by paying over to the complainant the money directed to be paid. The Master found that there was due to the complainant upon the notes and mortgage to December 1, 1933, the sum of $21,955.56 which, after applying as a credit thereon the next proceeds from the sale, that is to say, the price bid for the mortgaged premises at the sale less solicitors' fees and costs, left remaining the sum of $16,619.51 due. The Chancellor could not have legally entered a deficiency judgment for the improvement liens and taxes for the reason given in the opinion and decision of the Court mentioned, so the inference seems to be that the Chancellor intended to enter a personal judgment against the defendants Taylor and Pasco for part of the balance due upon the promissory notes, which in the Chancellor's opinion was equal in amount to a sum due for improvement liens and taxes.

In this view of the case, therefore, the first opinion of this Court failed to treat the only question involved, namely: did the appeal open for consideration a deficiency decree against Pasco and Taylor jointly on the promissory notes and mortgage?

The appellee then in September, 1935, applied for and obtained a rehearing in substance upon that ground. The

petition urged that the bill prayed for no decree for improvement liens and taxes, that the Chancellor by his decree in fact entered no judgment for such items, but in the exercise of a discretion vested in the court the Chancellor merely entered a deficiency decree on the debt evidenced by the notes and mortgage not for the entire amount of the deficiency, but for a part of it only which, as the Chancellor explained by a parenthetical clause in the decree, amounted to a sum equal to the amount due for such liens and taxes.

The opinion filed October 9, 1935, denying the rehearing with modification of the former opinion, so interprets the language of the petition.

The Court said that: the "Chancellor should not have indirectly allowed recovery for such tax and improvement liens either in the form of a deficiency judgment limited to the amount of same or by requiring in terms that the mortgagor should pay them, or by indirectly undertaking to measure the amount of a larger deficiency claim on the basis of other considerations, by the amount of such tax and improvement liens."

Assuming that the Chancellor had the power in the exercise of a reasonable discretion to enter a deficiency decree at all against Taylor and Pasco jointly for a much larger sum than the amount for which it was entered, it does not appear that any substantial injury was done to the defendants because the amount of such decree equalled the amount due for liens and taxes upon the property. The point in the mind of this Court seemed to be that the Chancellor in exercising the discretion to enter any deficiency decree should not have been influenced as his language indicated, by the fact that the property was burdened with tax liens and improvement liens which the defendants should have paid but did not, and which the complainant might have paid and did not, but which if she had paid would have in-

creased by that sum the amount of the debt secured by the mortgage, nor should the Chancellor have been influenced by the consideration that he could have ordered such liens and taxes paid out of the amount bidden for the property at the sale but did not, because presumably the purchaser in bidding for the property considered the amount due for such liens and taxes and gauged the amount she was willing to pay for the property by considering that she would take it *cum onere* the taxes and liens.

That view of the Chancellor's duty and the limitations within which he may exercise discretion generally in entering a decree for a deficiency in a mortgage foreclosure is, we think, correct, because if the Chancellor's discretion in such matters is influenced by considerations which should not affect his discretion then his discretion is not reasonably exercised. The rule, however, seems not to have been aptly applied in this case.

The discretion allowed to the Chancellor in such cases as this, a suit to enforce a purchase money mortgage, is necessarily very broad. Many considerations of an equitable character pro and con the entry of a deficiency decree must be considered. One element we should say which might appeal to the Chancellor when considering a deficiency decree for the complainant would be the mortgagor's mismanagement of the property mortgaged by which he permitted it to deteriorate in value to the serious impairment of the complainant's security. One method by which such injury to the security could be accomplished would be in allowing taxes and improvement liens to accumulate which would constitute a superior claim to the mortgagee's lien. In a case such as this where a wide difference exists between the debt against the property and the price which it brings at public sale due in no small measure to the mortgagor's mismanagement of it, the court may very reason-

ably enter a deficiency decree against the defendants liable on the mortgage for a sum sufficient to compensate the complainant for the impairment to her security. Upon reconsidering the case we think that is what the Chancellor did, which the choice of inept words in his decree seemingly contradicted. See Taylor v. Price, 101 Fla. 967, 132 S. R. 464.

The point in the opinion to which the appellee, Mrs. Finlayson, apparently takes most earnest exception to is presented in the paragraph in which the Court discussed the liability of Pasco, which the Court said was an implied one and not on the notes for security in the payment of which the mortgage was given; that even as a joint adventurer with Taylor the liability of Pasco was implied, although measurable in a proper case by the amount of the notes.

Following that opinion, counsel for the complainant on October 29, 1935, submitted a petition for a rehearing which was granted and the case orally argued on April 14, 1936, before all the justices of. the Supreme Court.

The petition sets out with much clearness and the brief submitted in support of it forcefully presents two questions which it is alleged this Court has failed to notice. First, the one discussed herein relating to the considerations influencing the Chancellor in entering a deficiency decree; the other relating to the implication in the court's second opinion that Pasco's liability, if any existed, was an implied one which could only be enforced in a proper action at law.

As to the first proposition, after a more careful examination of the record and the powers of the Chancellor under the statute, Chapter 13625, Laws 1929, we are of the opinion that it was within the Chancellor's discretion to enter a deficiency decree in the cause against the original mortgagor or mortgagors, and that the parenthetical phrase or clause in the decree, which produced such confusion and

about which mention has been made, in no wise affected the validity of the decree.

As to whether the deficiency decree should have been against Taylor and Pasco as joint adventurers doing business under the name of R. J. Taylor, Trustee, is the question the answer to which will determine whether the decree was erroneous or not.

The bill of complaint was exhibited against Taylor and Pasco and others. As to Taylor and Pasco the bill alleges that they and J. H. Scales, as joint adventurers, or partners, doing business in the name of "R. J. Taylor, Trustee," became and were indebted to J. H. Perkins in the sum of $16,666.65 as evidenced by their three certain promissory notes executed in the name of "R. J. Taylor, Trustee," and payable to Perkins. The notes are fully described. It is alleged that the three partners, or joint adventurers "doing business as R. J. Taylor, Trustee," made and executed their purchase money mortgage deed to Perkins upon the land described to secure the payment of the promissory notes.

Based upon those facts and others as alleged, the complainant, Mrs. Finlayson, as the sole heir at law of J. H. Perkins, who had departed this life in December, 1927, two years after the execution of the notes and mortgage as alleged and about five and a half years before this suit was commenced, sought the enforcement of the mortgage by foreclosure proceedings in which she prayed for accounting of the amount due to her from Taylor, Pasco and Scales "as joint adventurers or partners on the aforesaid mortgage indebtedness" and for interest, solicitors' fees and taxes and improvement liens; that Taylor, Pasco and Scales "as joint adventurers or partners" be required to pay all costs and attorneys' fees and "whatever sum shall appear to be due your oratrix upon the principal and interest secured upon the taking and stating of the said account as aforesaid."

There was a prayer that in default of such payment the premises be sold, and in the event of a sale and the mortgaged premises are not sold for a sum sufficient to discharge the "amount found to be·due, secured by the mortgage, and decreed to be paid as aforesaid" that a "decree for the difference or deficiency may be entered against the defendants, R. J. Taylor, John Pasco and J. H. Scales, as joint adventurers or partners."

The bill clearly seeks to enforce a mortgage lien alleged to have been executed by Taylor, Pasco and Scales in the name of "R. J. Taylor, Trustee," and his wife, to secure a debt definitely alleged to be the debt of Taylor, Pasco and Scales as joint adventurers or partners doing business as "R. J. Taylor, Trustee."

A motion to dismiss the bill by the three defendants, Taylor, Pasco and Scales, not as joint adventurers or partners, but as individuals, upon the grounds that no cause of action was stated against them; that the allegation that the three named defendants became indebted to Perkins was a mere conclusion of law as no facts were alleged to show such indebtedness; that the notes were signed by *"Taylor, as Trustee"* (which was a denial of the allegations of the bill) and that the mortgage was "only executed by R. J. Taylor, Trustee," joined by his wife (which also contradicts the allegations of the bill that Taylor, Pasco and Scales, as joint adventurers or partners doing business as "R. J. Taylor, Trustee," did "make and execute their certain purchase money mortgage deed" to secure the payment of the notes).

The point was also urged that the bill sought to hold Scales and Pasco to answer for the "debt, default or miscarriage of another, without any note or memorandum thereof in writing signed by the said John Pasco and J. H. Scales." That statement was also contradictory of

the allegations of the bill in part in that it was specifically and clearly alleged that the debt was the debt of the three as partners or joint adventurers and that the "default or miscarriage" was theirs, and that while the notes and mortgage were signed, that is to say, the partnership name was actually attached by Taylor, it was the act of the three who concurrently and conjointly acted to attach the signature or name under which as joint adventurers or partners they indeed acted.

There were other grounds dependent in the main upon those stated and some averments that were proper to be included in an answer, but not in a motion to dismiss, such as that Taylor acted in the transaction for some unnamed beneficiary which is an inferential denial that the execution of the notes and mortgage was the conjointly executed act of the three in the name under which they had associated themselves.

The motion to dismiss was overruled by an order in which the Court reversed the "right to determine on final hearing whether or not the defendants, John Pasco and J. H. Scales, are improper parties in said cause and whether or not there is any liability in said cause" against them.

Pasco and Scales then answered, in which the issue was made by specific denials of the bill's allegations, that the three defendants, Taylor, Pasco and Scales, conjointly acted in the transaction, that is to say, whether the debt was created and the notes and mortgage executed by them as co-partners or joint adventurers under the name of R. J. Taylor, Trustee, or whether the notes and mortgage were the individual obligation of R. J. Taylor.

Other defenses were interposed going to the merits of the complainant's bill, and attacking its equity. The answer contained a plea that the notes and mortgage were not the notes and mortgage of Scales and Pasco; that the com-

plainant by her own wrong is barred from maintaining the suit, that she is barred by lapse of time from maintaining the suit against Pasco and Scales. The answer also contained a motion to dismiss. By an order made on motion of the complainant, certain averments in the answer particularly relating to the phrase "Taylor as Trustee" were amended by striking the word *"as."*

The cause being at issue the court proceeded with the taking of testimony. On final hearing the decree of December 18, 1933, was entered. In that decree the court dismissed the bill as to Scales, determined the amount due on the notes, ordered the property to be sold in default of the payment of the amount found to be due, ordered the special master to sell the property and make his report to the court, which retained jurisdiction to settle all other questions that the court had jurisdiction to settle under the bill of complaint and proceedings. The decree definitely found that the complainant was "entitled to the relief prayed by her bill of complaint as against the defendants, R. J. Taylor and John Pasco, as joint adventurers, and to foreclose the mortgage therein mentioned and thereby sought to be foreclosed."

No appeal was taken from that decree and on February 28, 1934, the decree of confirmation was entered and the deficiency decree entered against Pasco and Taylor. It was from that order that the appeal by Pasco and Taylor was taken on August 1, 1934, five months and three days after the signing and entry of the first or final decree.

The brief for appellants on that appeal stated that seven questions of law were involved. The first, second, fifth, sixth and seventh statements of the questions of law involved relate to the validity of a deficiency decree against Pasco and Taylor on the notes asserting Pasco's liability as to the adjudicated debt, if it exists at all, to be an implied

liability as a joint adventurer with Taylor, urging in nega-
tion of such a proposition; first, the statute of limitations,
the absence of a written agreement between Taylor and
Pasco for the purchase of the land; that the notes and mort-
gage were signed only by one of the appellants "as Trus-
tee," the implied liability only of Pasco and that the de-
ficiency decree was for taxes on the premises which the
mortgagee had not paid. The third and fourth statements
of questions involved go to the merits of the complainant's
case and her equity to maintain the cause.

A summary of the legal principles involved as contained
in the brief reduces the questions to four, namely: first,
Pasco's interest in the land mortgaged was shown only by
parol testimony; second, the power of the Chancellor to
enter a deficiency decree against Pasco, who did not sign
the notes and mortgage; third, the power of the court to
enter a deficiency judgment against Pasco on an implied
legal obligation barred by the statute of limitations, and
fourth, the right of the mortgagee to a deficiency decree for
taxes and improvement liens which the mortgagee did not
require the mortgagor to pay and which the mortgagee did
not pay.

The last proposition we have already disposed of in this
opinion against the appellants by showing that the de-
ficiency decree was not in fact for the taxes and liens spe-
cifically, but that the decree was in fact for a small balance
of the debt remaining unpaid after the application of the
proceeds of sale, and that the decree was for a sum which
was equal to the amount due for taxes and liens but a frac-
tion only of the balance due for which the Chancellor might
have entered a deficiency judgment, and that in considering
what amount that should be he could take notice in the ex-
ercise of a reasonable discretion that the mortgagors had

permitted the security to become depreciated by allowing such liens to accumulate.

It is true that a buyer at the sale would consider the amount due for unpaid taxes and gauge the price he would be willing to pay by the sum due for such purpose, but that would be any purchaser's right, even the mortgagee, who might become a bidder at the sale. Nevertheless the security would be depreciated by the amount due for such taxes, and the debt lack that much, if not more, of being satisfied by the application of the proceeds of sale.

As to the first proposition which relates to Pasco's interest in the property being shown only by parol testimony, it may be answered by the Chancellor's finding that it was partnership property. As such, although the legal title to it was taken in the name of one of the partners, they were joint adventurers, each member of the organization bound for the purchase price under the doctrine of agency and although some of them did not sign the papers, and the note and mortgage back for the purchase price were executed by one of them nevertheless all in the group were in the transaction and responsible and those not signing the papers were personally liable for a deficiency upon the foreclosure of the mortgage. See Proctor v. Hearne, 100 Fla. 1180, 131 South Rep. 173; Drew v. Hobbs, 104 Fla. 427, 140 South. Rep. 211; Bryce v. Bull, 106 Fla. 336, 143 South. Rep. 409.

In the Proctor-Hearne case, *supra,* there was a written agreement between Lewis and Drew that the land should be purchased by them and title taken thereto in the name of Lewis. That, however, is an immaterial matter, as the liability on the debt exists irrespective of the existence of a written agreement between the joint adventurers or partners. The liability exists by virtue of the law of agency. A joint adventurer has power to bind co-adventurers in

matters strictly within the scope of the joint enterprise. Bryce v. Bull, *supra*.

Mr. Justice Davis' dissenting opinion in that case rested upon the proposition that if no present intent to participate in a joint enterprise is shown liability cannot be imputed from mere concert of action in the absence of some element of estoppel arising which precludes the party from a denial of liability under particular circumstances, however he agreed that when intent to participate as a joint adventurer is shown liability follows regardless of the fact that the parties may have actually thought or intended that liability would not follow.

The Chancellor found the fact against the appellants; that they intended to participate as joint adventurers and agreed among themselves to take the title to the land and execute the notes and mortgage for the purchase price therefor in the trade name of "R. J. Taylor, Trustee." That name was adopted by them as completely representing them as if it had been the name of a corporation. The liability for the partnership debt cannot be made to depend upon the absence of a written agreement between them to take the title in that name, because in the absence of such an agreement, the facts being established, an equitable interest would exist in each joint adventurer enforceable in equity.

The final decree finding the facts to exist which impose liability upon Pasco as well as upon Taylor as a basis for the deficiency decree is not attacked by this appeal which does not bring that decree here for review.

In the foreclosure proceeding the complainant decided to and did submit to the jurisdiction of the court the question whether in the circumstances she should have a deficiency decree. See Coe-Mortimer Co. v. Dusendschon, 113 Fla. 818, 152 South. Rep. 729; Belle Mead Dev. Corp. v. Reed, 114 Fla. 300, 153 South. Rep. 843.

The issue on Pasco's liability was definitely made and the Chancellor found against him. We are unable to say from an inspection of the record that he erred even if the final decree, the one entered in December, 1933, which found that the complainant was entitled to the relief sought against Taylor and Pasco as joint adventurers, is before us.

The appeal presents for review only the propriety of a deficiency decree against the two defendants found by the Chancellor in the first decree to be joint adventurers in the purchase of the land and liable each for the payment of the debt for the purchase price evidenced by a note and mortgage signed by one of them *"as trustee,"* but in the name of the joint adventurer, "R. J. Taylor, Trustee," a name adopted by them for the purpose.

So it is that the writer of this opinion and Mr. Justice TERRELL, and Mr. Justice BUFORD, have reached the conclusion upon reconsideration of the cause, that the facts disclosed by the record warrant an affirmance of the decree from which the appeal was taken.

But Mr. Chief Justice WHITFIELD, Mr. Justice BROWN, and Mr. Justice DAVIS, are of contrary opinion with respect to the availability of equity procedure to sustain a deficiency decree against any except the individual signers of the mortgage in this case, the views of the Justices being stated in the separate opinion of Mr. Chief Justice WHITFIELD herewith filed.

It is the policy of the law that litigation must end sometime and that it shall be speedily determined. Therefore upon this consideration, inasmuch as the even division of the Court is upon a question of procedure only, the Court has concluded that such even division of the Court on the procedural question involved should result in a conclusion to affirm the decree appealed from and not in a reinstate-

ment of the former opinion of this Court, and such will be the judgment to be entered by the Court on this rehearing.

Decree appealed from affirmed on rehearing because of equal division of Supreme Court on procedural question involved.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

WHITFIELD, C. J. (dissenting in part).—"In the absence of a statute, or rule of court made in compliance with law, no decree in chancery for a deficiency, after a sale of the mortgaged property could be entered in a court of equity, unless it be that the debt, without the mortgage, is such that a court of chancery would have jurisdiction of it, and could render a decree for it."   Webber v. Blanc, 39 Fla. 224, 22 So. 655.

"Denial of a deficiency decree in a mortgage foreclosure does not affect the obligation involved, but pertains only to the remedy for its enforcement."   Taylor v. Prine, 101 Fla. 967, 132 So. 464.

Section 5751 C. G. L., as amended by Chapter 13625, Acts of 1929, like Equity Rule 89, authorizes a deficiency decree in a mortgage foreclosure only against those who sign the mortgage.   Van Sant v. Duval Cattle Co., 116 Fla. 159, 156 So. 369.

An adjudication in a foreclosure suit that parties thereto, other than those who signed the mortgage, are joint obligors or adventurers with the signer, and liable for the mortgage debt, is for the purpose of the mortgage foreclosure as to the mortgaged property, and not to render personal deficiency decrees in equity against those who did not sign the mortgage or assume its covenants, the remedy against the latter being at law on the implied liability.   See Proctor v. Hearne, 100 Fla. 1180, 131 So. 173; Drew v. Hobbs, 104 Fla. 427, 140 So. 211.

The foreclosure decree found the complainant "entitled to the relief * * * prayed against the defendants, R. J. Taylor and John Pasco, as joint adventurers." This fixed the legal liability of the two defendants for the mortgage debt for the purpose of foreclosing the mortgage on the property. Taylor, signing the mortgage as "R. J. Taylor, Trustee," is expressly liable on the covenants of the mortgage. Pasco did not sign or expressly assume the mortgage covenants. His liability for the mortgage debt is implied by the relation to the joint adventure and may be enforced at law, no right to a deficiency decree in the foreclosure suit being shown.

The deficiency decree is against "R. J. Taylor and John Pasco as joint adventurers doing business under the name of R. J. Taylor, Trustee." The notes and the mortgage were signed by "R. J. Taylor, Trustee," and not by John Pasco. See Sec. 6778 (4692) C. G. L. While both may be liable as joint obligors or adventurers for the mortgage debt, a deficiency decree in a mortgage foreclosure suit may be rendered only against the joint obligor or adventurer who signed the notes and the mortgage and thereby expressly signed and assumed the mortgage covenants; the remedy against the other joint adventurer who did not sign or expressly assume the mortgage covenants, is at law on the implied liability to pay the mortgage debt growing out of the joint adventure and obligation, no right to a deficiency decree in equity being shown as to Pasco.

In Van Sant v. Duval Cattle Co., 116 Fla. 159, 156 So. 369, all the parties signed the bond for the debt, but only the Duval Cattle Company signed the mortgage. The bond signed by all the parties expressly referred to the mortgage given to secure the debt, but the mortgage covenants were not assumed by any of the parties except the signer of the mortgage, the Duval Cattle Company. A deficiency decree

against those who did not sign the mortgage was decreed without prejudice to appropriate procedure.

One partner has no implied authority to bind the firm by an instrument under seal; though where such an instrument is executed by one partner in the firm name, within the scope of partnership business, it may be ratified by the other partner. Fischler v. Kurtz Bros., 35 Fla. 323, 17 So. 661.

BROWN and DAVIS, J. J., concur.

### UPON THIRD PETITION FOR REHEARING.

PER CURIAM.—Where by special permission of the Court an argument is allowed on a petition for a rehearing in advance of the granting of a rehearing in a case decided by the Supreme Court, and the Court after full and fair argument of the matters presented by the petition for a rehearing is of the opinion that such petition for rehearing is well founded, and that the prior decision of the Supreme Court should not be adhered to, but should be receded from in whole or in part, it is competent for the Supreme Court to dispose of the whole case upon the argument and hearing had on the petition for a rehearing without granting a formal rehearing, and thereupon enter such new or amended appellate judgment in the premises as may be appropriate and in accordance with the opinion of the Supreme Court arrived at upon the reargument had upon the petition for rehearing. Such was the practice followed in this case and therefore the petition for reconsideration of the Court's opinion filed herein on July 14, 1936, is denied and the following judgment of the Supreme Court in the premises entered: "That the previous judgment of the Supreme Court herein be vacated and set aside upon consideration of the appellee's second petition for rehearing and that the decree appealed from be now affirmed because of an equal division of the Supreme Court solely on procedural ques-

tions which a majority of the Court are of the opinion should not work a reversal of the decree under the circumstances of this case as shown by the record, the costs of appeal to be taxed equally against appellants and appellee."

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

## ON FURTHER REHEARING.

PER CURIAM.—On January 18, 1937, this Court granted a second and extraordinary rehearing in this case for the purpose of hearing arguments confined solely to the question: "Whether or not the case of Carmichael v. Eberle, 177 U. S. 63, 44 L. Ed. 672, 20 Sup. Ct. Rep. 571, requires adherence by this Court to its original petition filed herein on September 3, 1935, wherein and whereby the decree of the lower court was reversed, all of the Justices concurring?"

The situation out of which this inquiry develops arose as follows: After the original hearing and reversal of the decree of the lower court a petition for rehearing was filed and the Court on the 9th day of October, 1935, by unanimous opinion denied that petition for rehearing. Thereupon an extraordinary petition for rehearing was filed and the Supreme Court, without granting a rehearing, ordered oral argument on that petition for rehearing but without granting a rehearing in advance of the argument. After the argument on that petition for rehearing the Court became equally divided as to whether or not the decree below should be affirmed or reversed. Justices ELLIS, TERRELL and BUFORD were of the opinion that the decree of the lower court should be affirmed and that the prior decision of the Supreme Court entered September 3, 1935, should be annulled and set aside. Justices WHITFIELD, BROWN and DAVIS were of the contrary opinion. To bring this litigation to an end an order was entered by the Court to the

effect that because of the even division of the Court, the decree appealed from should be affirmed rather than the former opinion of the Supreme Court reinstated.

After that order a petition for rehearing (this time interposed by the appellants) was filed. That petition was denied. Thereupon a second and extraordinary petition for rehearing, again by the appellants, was filed, with the result that the order of this Court entered on January 18, 1937, was made granting a rehearing restricted to the peculiar question hereinbefore stated at the outset of this opinion.

Appellants in arguing our question urge the view that since the first opinion of the Supreme Court reversed the decree, only a majority of the Court can avoid that opinion and that the subsequently developed equal division of the Court on the subject whether or not the decree should be affirmed or reversed is not within the rule of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 Sou. Rep. 51, but is controlled by the principle laid down in Carmichael v. Eberle, *supra,* wherein it was held by the Supreme Court of the United States that an equal division of the Court on a motion for rehearing of a judgment of reversal rendered by the appellate court leaves the appellate court's judgment in force and does not result in affirming the judgment of the lower court as in cases where the equal division of the appellate court occurs upon the original consideration of the appeal. In this connection it is pointed out by appellants that in the case of Florida Motor Lines, Inc., v. Hill, 106 Fla. 33, 143 Sou. Rep. 261, this Court expressly cited with approval the decision of the United States Supreme Court in the case of Carmichael v. Eberle, 177 U. S. 63, 44 L. Ed. 672, 20 Sup. Ct. Rep. 571, and upon the authority of that case adhered to its own previous judgment of reversal upon an equal division of the Supreme Court after rehearing had been granted. It is fur-

ther pointed out by appellants that Florida Motor Lines, Inc., v. Hill, *supra,* was followed by this Court in the later case of Benson v. First Trust & Savings Bank, 105 Fla. 135, 145 Sou. Rep. 182, wherein it was said that an original judgment of the Supreme Court on appeal should be ordered to stand unaltered on second rehearing when there was an equal division of the Court as to the decision of such appeal on such rehearing. To the same effect is the case of Foster v. Thornton, 119 Fla. 49, 160 Sou. Rep. 490. Other cases following the same principle are M. F. Comer Bridge & Foundation Co. v. Sheeran, 119 Fla. 543, 161 Sou. Rep. 60, and City of Marianna v. Davis, 124 Fla. 145, 169 Sou. Rep. 50.

In opposition to the application of the rule laid down by the Supreme Court of the United States, and cited with approval by this Court in our own decisions to which reference has just been made, appellee takes the position that the Supreme Court has the power, so long as it retains jurisdiction of a cause, to vacate and set aside its judgment, with or without petition for rehearing, and that since this Court has impliedly vacated and set aside its original opinion by granting a petition for rehearing, with all Justices concurring therein, that the judgment of the lower court should be affirmed when there is an equal division of the Court on such rehearing granted, especially where the equal division of the Court is as to a reversal of the decree for procedural reasons only.

The case of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, *supra,* has been often cited by this Court as authority for affirming judgments of the Circuit Court in cases where there is an equal division of the Supreme Court on whether or not a lower court's judgment should be affirmed or reversed. But the true interpretation of that decision, as a reference to it will show, is not that an equal division of

the Supreme Court results in an automatic or *ex proprio vigore* affirmance of the Court's decision, but simply that all the Judges agree to vote to affirm the judgment of the lower court in such cases as an expedient to accomplish the winding up of the litigation.

In other words, supported by the presumption of correctness which always attaches to an appealed *judgment* brought before a court of review, the Judges of the appellate court, who are in favor of reversal may appropriately waive any insistence on mere matters of opinion and thereupon unite with their associates in an affirming the *judgment* appealed from, when that appears to be necessary to bring the litigation to an end, especially when they do so without in any way relinquishing their individual conviction upon the particular questions of law or fact involved in the decision of the case. As was said by this Court in the opinion in State, *ex rel.* Hampton, v. McClung: "Under our constitutional provision an equal division of opinion cannot have the effect *ipso facto* of an affirmance, for the Constitution makes the concurrence of a majority necessary to a decision, but where the division is permanent and there is no probability of an immediate change in the personnel of the Court, it becomes the duty of those in favor of reversal to unite with their associates in affirming the judgment, otherwise the case might be continued indefinitely, and the delay amount to a denial of justice."

An equal division of the Supreme Court is most commonly confined to questions of opinion only. It does not ordinarily import a division as to the nature of the appellate judgment to be rendered except as the judgment is implicit in the consensus of the opinions expressed by the several judges. Therefore, in any case when the Justices become equally divided in their opinions as to whether or not error has been demonstrated in an appellate cause, the inquiry

naturally arises as to what kind of judgment (as distinguished from opinion) shall be rendered in the case in order to put an end to the litigation and at the same time not relinquish the individual convictions of the several Justices as to the law and facts of the case.

Ordinarily such a stalemate in the judicial process, where it occurs upon the original consideration of an appeal, is best solved by the Justices who favor reversal joining with the Justices who favor affirmance so as to terminate the litigation by preserving the *status quo*. And after rehearing (or on consideration of a petition for rehearing) it is ordinarily best solved by those Justices who favor a change in appellate result joining with the Justices who want the original appellate result to stand to the end that the first appellate judgment shall be made the judgment final of the appellate court in that particular case.

Where, however, there is an equal division of the Supreme Court on a question of procedure, so that the judgments of the Supreme Court, if one of reversal, must be a reversal with directions, and because of an equal division of the Court there is no majority concurrence, and can be no majority concurrence, in the character of directions to be given incident to a judgment of reversal, the judicial stalemate is best obviated by the Justices as a whole concurring in such judgment as will finally end the litigation through an affirmance of the judgment of the lower court, where such disposition can be agreed upon by the Justices who favor reversal, without the surrender on their part of their individual convictions in the premises.

Such has been the course followed in this case. So while we adhere to the principles of our previous decisions following and affirming Carmichael v. Eberle, *supra,* we distinguish the present case from the others on the basis of what has just been said as to the nature of the equal di-

vision of the Justices, and so holding, we reaffirm our appellate judgment of November 9, 1936.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

Mr. Justice DAVIS concurred in the foregoing opinion.

BROWN, J. (dissenting).—There is a difference between the members of the Court which goes deeper than a mere matter of procedure. It goes to the affirmance or reversal of a money judgment, which we originally reversed and held could not have been validly rendered against Pasco. We denied a rehearing. Third parties acquired rights relying on our apparent final action. I think we should return to and stand by our original opinion and decision.